Hillsborough, } No. 3439.
Dec. 7, 1943. }

STATE *v.* BERT BASSETT.

*Stephen M. Wheeler*, Attorney-General, and *J. Vincent Broderick*, County Solicitor (*Mr. Wheeler* orally), for the State.

*Charles W. Tobey, Jr.* (by brief and orally), for the defendant.

MARBLE, C. J.  A few years after the death of her mother Edith Blanchard, then twelve years of age, left her father's home and went to Deering to live in the home of her aunt, who is the wife of the defendant.  At the trial Mrs. Bassett, the aunt, testified that on September 7, 1940, she went with her niece to an attorney's office to consult the attorney concerning adoption and guardianship and that on that occasion Edith stated that she "didn't want to go back to her father because he wouldn't keep her" but would let her brother and his wife "have her," and that the reason she gave for not wanting to go there was because Raymond "slept with her."  This testimony was offered and received in contradiction of Edith Blanchard, who had previously denied making any such statement.

At the hearing on the motion defendant's counsel presented a sworn statement of Edith Blanchard to the effect that she had been told by her father to make the charges against the defendant and that these charges were false.  This statement was in the form of questions asked by counsel, to which a simple affirmative answer was given.  The State produced at the hearing a counter affidavit in which Edith declared in substance that what she had said at the trial was true and that she had changed her story because her aunt and defendant's counsel were bothering her and she thought if she did change her story they would leave her alone.

None of the affiants hereafter mentioned testified at the hearing

on the motion. Defendant's counsel stated at the hearing that the only persons who would testify were persons who would be able to state whether or not the affidavits had been obtained in a proper manner. "The moving party in a motion of this kind is generally required to present to the trial Court the best evidence obtainable in support of the allegations of the motion." *State* v. *Long*, 90 N. H. 103, 107, and cases cited. The Presiding Justice did not deny the motion, however, on the ground that the best evidence had not been produced.

Certain findings and rulings in relation to the evidence alleged to have been newly discovered are as follows:

"An affidavit of a psychologist states that the complaining witness, Edith Blanchard, was of border-line intelligence, only two points removed from the moron level of deficiency. This lack of normal intelligence on the part of the young girl was apparent at the trial to both Court and jury, who saw and listened to her on the witness stand, as they did to the respondent himself. This affidavit, of course, relates only to the credibility of the witness.

"Three of the affidavits that are said to contain newly discovered evidence may be considered together. That of Irene McAllister quoted Edith Blanchard as saying that Uncle Bert [the defendant] had always been good to her, but that her father had threatened her with a licking if she didn't go against Uncle Bert. The affidavit of Raymond R. Blanchard, a brother, confesses to sexual intercourse with Edith, and reports hearsay that the father had had similar relations. That of Alice Normandin quotes Edith as saying that the brother had had improper relations with her.

"The evidence in these three affidavits is either cumulative or impeaching only. In either event it is not ground for a new trial. *State* v. *Danforth*, 73 N. H. 215."

With reference to this conclusion, it should be noted that "All the cases agree that evidence which goes to a point upon which no evidence was adduced at the former trial is not cumulative." *Watkins* v. *Railroad*, 80 N. H. 468, 476, 477. It is true, as the defendant contends, that at the trial there was no evidence that the Blanchard family or any of its members "conspired to bring about the conviction of an innocent man," although defendant's counsel in his argument to the jury urged the jurors to draw that inference from the testimony of Mrs. Bassett. The only direct, affirmative evidence now offered on that issue is the statement of Edith Blanchard which she later repudiated. The defendant's present counsel calls atten-

tion, however, to certain undisputed facts shown at the trial which, he argues, have a significant bearing on the issue.

On September 11, 1940, John Blanchard, Edith's father, came to the Bassett home and took Edith away. On or about November 14 Mrs. Bassett, having learned that Edith was at Raymond Blanchard's shack in Hillsborough, took steps to have the welfare society investigate conditions there. On November 15 a police officer called at the shack and there received from Raymond Blanchard's wife information concerning the alleged abuse of Edith by the defendant.

Counsel suggests that a new jury would learn that the Blanchards knew, "when the police investigated conditions at the shack upon the complaint of Bert Bassett's wife, that a medical examination would show that Edith Blanchard had been sexually abused; that John and Raymond Blanchard were, in fact, guilty and would naturally be questioned by the police; and that they therefore had a two-fold motive to coerce Edith into making false charges against Bert Bassett: self-protection, and a vengeance against the woman who had made the complaints which led to the investigation."

The affidavit of Irene McAllister recites declarations made by Edith Blanchard in contradiction of her denial that she had been coerced into making the accusations against the defendant. These declarations do not constitute affirmative evidence on the issue in question. "In a criminal prosecution, the person to whose injury the crime was done is in no legal sense a party, and his statements are not receivable, except, of course, by way of self-contradiction as a witness." 4 Wig. Ev. (3d *ed.*), *s.* 1076, *pp.* 113, 114.

But although Edith Blanchard was not a party in the legal sense, she was the principal witness for the State; the defendant could not have been convicted without her testimony, and the part of her testimony now assailed is her statement that the defendant had sexual relations with her. The situation is quite different from that considered in *State* v. *Danforth*, 73 N. H. 215, 221, where the impeaching evidence related to alleged facts which, "if proved, would not establish that the defendant was not guilty." The affidavit in question relates to "the essential portion of the evidence upon which the conviction of the defendant rests." *Bussey* v. *State*, 69 Ark. 545, 547. It is material evidence on the issue raised by the motion.

The questions of fact involved in motions for new trials are usually held to be within the jurisdiction of the trial Judge. *State* v. *Long*, 90 N. H. 103, 107, and cases cited. The Presiding Justice expressly states that the motion is not denied on technical grounds, that the

defendant, on the other hand, "is entitled to whatever protection the law affords him, whether technical or not," but that a new trial "cannot, of course, be ordered upon the theory that it might result in an acquittal."

This would seem to constitute an implied finding that the evidence is insufficient to satisfy the Presiding Justice that upon a new trial a different result is probable. How far this implied finding is based on an incorrect interpretation of the decision in *State* v. *Danforth*, *supra*, does not appear. Since it may have been so based, the order denying the motion must be set aside. Moreover, as already suggested, a motion of this kind cannot, as a general rule, be satisfactorily determined on the mere affidavits of the witnesses. The circumstances appear to call for the procedure adopted in *State* v. *Long*, *supra*. The available witnesses should be presented to the trial Court for examination. If, on hearing the witnesses, the Presiding Justice finds that on another trial a different verdict will probably be rendered, a new trial should be granted. If a contrary finding is made, and no exception thereto is transferred for the consideration of this Court, the motion should be denied.

*Case remanded.*

JOHNSTON, J., did not sit: the others concurred.